1

2          UNITED STATES DISTRICT COURT **RECEIVED**
            DISTRICT OF NEW JERSEY
3            Civil Action No. 08-134     **MAY - 7 2009**

4   _____        *JOEL SCHNEIDER*
                                             *U.S. Magistrate Judge*
5      In Regard to the Matter of:

6      Bayside State Prison              OPINION/REPORT
       Litigation                           OF THE
7      EDDIE CARTER                      SPECIAL MASTER

8              -vs-

9      WILLIAM H. FAUVER, et al,

10             Defendants.

11  _____

12

13

14            *        *        *        *

15              **TUESDAY, APRIL 14, 2009**

16            *        *        *        *

17

18

19

20
    BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER
21

22

23

24

25

1

2

3

4              Transcript of proceedings in the above

5    matter taken by Theresa O. Mastroianni, Certified

6    Court Reporter, license number 30X100085700, and

7    Notary Public of the State of New Jersey at the

8    United States District Court House, One Gerry Plaza,

9    Camden, New Jersey, 08102, commencing at 2:34 PM.

10

11

12

13

14

15

16

17

18              MASTROIANNI & FORMAROLI, INC.

19          Certified Court Reporting & Videoconferencing

20                 251 South White Horse Pike

21                  Audubon, New Jersey 08106

22                      856-546-1100

23

24

25

1

2  **A P P E A R A N C E S:**

3

4       LOUGHRY & LINDSAY, ESQUIRES.
        BY:  LAWRENCE W. LINDSAY, ESQUIRE
5       330 MARKET STREET
        CAMDEN, NEW JERSEY 08102
6       856-968-9201
        ATTORNEYS FOR THE PLAINTIFFS
7

8

9       RODNEY D. RAY, ESQUIRE
        32 NORTH BLACK HORSE PIKE
        BLACKWOOD, NEW JERSEY  08012
10      856-232-3337
        856-232-4561
11      ATTORNEYS FOR THE PLAINTIFFS

12

13      ROSELLI & GRIEGEL, PC
        BY:  MARK ROSELLI, ESQUIRE
14         - and -
        BY:  JAMES LAZZARO, ESQUIRE
15      1337 STATE HIGHWAY 33
        HAMILTON SQUARE, NEW JERSEY  08690
16      609-586-2257
        ATTORNEYS FOR THE DEFENDANTS
17

18

19

20

21

22

23

24

25

```
 1                    JUDGE BISSELL:   I'm now reopening
 2   proceedings in the case of Eddie Carter, docket
 3   number 08-134.
 4                    This opinion/report is being issued
 5   pursuant to the directives of the Order of Reference
 6   to a Special Master and the Special Master's
 7   Agreement and the guiding principles of law which
 8   underlie this decision to be applied to the facts
 9   upon which it is based as set forth in the jury
10   instructions in the Walker and Mejias jury charges to
11   the extent applicable to the allegations of
12   Mr. Carter.
13                    As finalized after review under Local
14   Civil Rule 52.1, this transcript will constitute the
15   written report required under paragraph seven of the
16   Order of Reference to a Special Master.
17                    Eddie Carter arrived at BSP and was
18   assigned to D Tent during the lockdown.  He testified
19   to certain events that allegedly occurred to him.  He
20   talked about a beating in D Tent beginning at page
21   eight, line 16.  He's asked:
22                    "Question:  Can you tell us how long
23   after you arrived in D Tent did the beating occur?
24                    "Answer:  I think it was like about the
25   second or third day I was there and, you know, like
```

1   from the first day, every night they would have a

2   certain group of officers coming through the tents,

3   very angrily coming through the tents, and I seen

4   them pull people before I ever got pulled, but like

5   about the second day I was selected to go -- I didn't

6   know where I was going, but I was selected to go with

7   a group of people, and they took us to another rec

8   area.   That's where I was assaulted at."

9               After a bit of colloquy that's not

10  particularly relevant here, resuming at page nine on

11  line 15:

12              "Question: Tell me what they said to

13  you, or what one of them or all of them said to you

14  when they came to your bunk.

15              "Answer:   Well, when you come in the

16  tents, they just came in and just started to select

17  people to get up and step outside so, you know, I was

18  just selected just to get up and step outside.   So

19  when I went outside, there was already like about ten

20  people already out there, so I just had to get into

21  that line.

22              "Question:   Now, is this the rec area

23  that you mentioned a few minutes ago?

24              "Answer:   This is in front of the tent

25  and when we left from in front of the tent, they

marched us down to the rec area.

"Question:  The rec area, is that also outside?

"Answer:  Yes, it is.

"Question:  Is that --

"Answer:  It's about 25 yards from the tent.

"Question:  That's a recreation area; is that correct?

"Answer:  Yes, it's the big building, about three times the size of this (courtroom), where they, you know, did meals at."

He was questioned further about this incident.

"Question:  When you were brought in there, what area of the rec area were you brought to?

"Answer:  Well, when you walk in the door it's just a big open space and you had a lot of chairs in there because they also have TV rec time in there and everything.  So we were just brought in there and ordered to lay face down on the floor."

He talks about lying face down on the floor and getting kicked in the butt, as he described it, getting beaten back down when he tried to get up off the floor instinctively, that he was also kicked

1   in the bridge of his nose and broke his nose.  And

2   bloodied it as well.

3            However, in his cross-examination,

4   particularly when confronted with his deposition

5   which had been taken in October of 2002, he has a

6   very different story to recount.

7            Talking about this assault, begins at

8   page 30 of that deposition:

9            "Question:  What happened?

10           "Answer:  On the second day I was

11   there, they called, they called D Tent out and they

12   called us to -- I guess it was a rec hall that

13   they -- it wasn't nothing there.  Just a tent.

14   Another big, big, big tent.

15           "Right.

16           "You know, and they called us in there

17   about 12 o'clock in the morning, something like that.

18   12 in the morning.

19           "About 12 in the morning.  12 midnight?

20           "Answer:  12 midnight, yeah.  And they

21   called us in there, you know, they knew who we were,

22   you know, the officers.  They called us over, they

23   knew who we were."

24           After some intervening testimony that's

25   not particularly pertinent to this point his

1    testimony resumes at this description at page 37 of

2    the deposition transcript.

3                "Question:  All right.  So what

4    happened on this evening after your call.  You say

5    you recall that it was your whole tent called?

6                "Answer:  The whole tent was called

7    over.

8                "Question:  What happened?

9                "Answer:  They called us over and, you

10   know, had us walk over to the rec tent.  I think they

11   called it, rec tent.  And when we got in there, they

12   told us to sit.  They had the chairs lined up, told

13   us to sit in the chairs and face the wall and put our

14   head in our laps.

15               "Question:  Put your head in your lap?

16               "Answer:  Yes.

17               "Question:  Okay.

18               "Answer:  You know, that's not the way

19   they said it, but you know, that's what it was they

20   was telling us to do.  And we did that, you know,

21   and, you know, I couldn't put my head in my lap, you

22   know.  So when I couldn't do that, you know, the

23   officer thought I was rebelling against him, what he

24   was trying to get me to do.  Right.  So at that

25   point, you know, he got on the back of my neck and

1   just jammed me down as far as he could.  But every

2   time he let me go, my head would come back up."

3                He then recounts at this point being

4   slammed down to the floor of the tent from his chair

5   as a result of this disobedience.  He was lying on

6   the floor at which point he was then kicked.  His

7   recollection is that they were SOG officers that did

8   that, although that's not entirely clear.

9                Here again, we have a situation with a

10  significant discrepancy in the description of the

11  events.  At trial before me he testified that it was

12  a small select group of ten persons or so taken out

13  of the tent, taken into the rec building, placed on

14  the floor immediately and then assaulted.

15               In his testimony on deposition years

16  earlier he testifies that the whole tent was cleared

17  out, taken into the rec building and told to sit in

18  the chairs in a certain fashion.  And then upon his

19  either refusal or inability to do so, he is taken

20  down to the floor or pushed down to the floor and

21  then assaulted.

22               Once again, I don't consider that

23  discrepancy to be trivial.  One might say, well,

24  what's the difference, you know, he got beat up.

25  Well, maybe he did or maybe he didn't, but the

1   situation is this:  If you're fabricating a story,

2   differences like this occur because maybe you don't

3   always remember what you said the first time.  The

4   truth, frankly, doesn't have to rely on that.  And I

5   just find that there was no indicia of truth as to

6   the happening of this event at all in light of the

7   fact that we have two materially different versions

8   of the event.

9          Perhaps stated another way, I think

10  it's an appropriate inference that if called again to

11  testify maybe in another six or 8 months or so about

12  this event, we would probably get a third version.

13         Mr. Carter has failed to establish that

14  this event in the recreation building in the area of

15  the tents did, in fact, occur.

16         Finally, although not every item of

17  evidence has been discussed in this opinion/report,

18  all evidence presented to the Special Master was

19  reviewed and considered.  For the reasons set forth

20  above I recommend in this report that the district

21  court enter an order and judgment of no cause for

22  action with regard to Eddie Carter.

23         Gentlemen, I'll see you tomorrow at

24  9:30.

25         (Hearing Adjourned)

C E R T I F I C A T E

I, Theresa O. Mastroianni, a Notary Public and Certified Shorthand Reporter of the State of New Jersey, do hereby certify that the foregoing is a true and accurate transcript of the testimony as taken stenographically by and before me at the time, place, and on the date hereinbefore set forth.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

_____
Theresa O. Mastroianni, C.S.R.
Notary Public, State of New Jersey
My Commission Expires May 5, 2010
Certificate No. XI0857
Date: April 16, 2009